UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

******************************************
AMADO PEREZ AVALOS,

                Plaintiff,                        Civil Action No.
                                                        9:09-CV-0211
      v.                                                     (TJM/RFT)

DEBORAH G. SCHULT, Warden, FCI Ray Brook,
D. MARINI, Clinical Director, FCI Ray Brook,

                Defendants.
******************************************

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS

**Introduction**

      Plaintiff is an inmate who has filed a *Bivens* claim, alleging that the warden and a doctor knew of certain unspecified injuries. He was previously given leave to amend his complaint. The defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. The Complaint does not allege any facts that could be construed as deliberate indifference regarding his medical treatment, and does not allege any personal involvement by the defendants in a constitutional violation.

      The defendants also move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiff has been deported from the United States five times and he is currently deported, barred from the United States, and living in Mexico. He has no legal attachment to the United States and no standing.

**Procedural history**

      I.        **Original Complaint: USP Lompoc**

On February 20, 2009, plaintiff filed a civil rights complaint pursuant to 42 U.S.C. §1983, naming "Warden; B.O.P.; U.S.P. Lompoc" as defendants. He alleged that on December 31, 2005 he fell in the Special Housing Unit at USP Lompoc as a result of negligence by federal officials. He also alleged that on May 18, 2005 he was attacked by two sheriffs of San Bernardino County. He described his first cause of action as a tort claim, his second cause of action as a tort claim, and a third cause of action as "this suit, 42 U.S.C. § 1983."

On March 13, 2009 this Court issued a Decision and Order which *sua sponte* dismissed the complaint for failure to state a claim and as untimely. Docket No. 6. Reading the complaint liberally, the Court construed it as stating claims pursuant to the FTCA (Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq*.), and *Bivens v. Six Unknown Named Agent of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (p. 3). The Court concluded, based upon records submitted by plaintiff himself, that his FTCA claim was time-barred (p. 4). Regarding the *Bivens* claim, this Court ruled that plaintiff's allegation of negligence in the slip-and-fall did not state a claim for the violation of his constitutional rights (p. 5); the complaint failed to state any allegations of wrongdoing by Warden of USP Lompoc (p. 5); and the *Bivens* claim was time-barred pursuant to the applicable two-year statute of limitations in California (p. 6).

Plaintiff took an appeal. On June 22, 2009 the U.S. Court of Appeals for the Second Circuit issued a summary order which vacated this Court's judgment, citing authority that district courts should liberally construe *pro se* pleadings and should not dismiss a complaint *sua sponte* on statute of limitations grounds, without granting the plaintiff notice and a chance to be heard. Docket No. 10.

The Court of Appeals remanded with instructions to provide plaintiff with an opportunity to amend his complaint.

This Court issued an Order filed July 27, 2009 which directed the Clerk to reopen this action, consistent with the Second Circuit order, and advised plaintiff that if he wished to proceed with this action he must filed an amended complaint which showed the action was not time-barred. Docket No. 12.

### II.     Amended Complaint: FCI Ray Brook

On August 24, 2009 plaintiff filed an amended complaint. The amended complaint relates to a different prison (FCI Ray Brook, not USP Lompoc) and makes completely new allegations. Plaintiff no longer alleges he slipped and fell at Lompoc, or was assaulted by sheriffs from San Bernardino County. He now names as defendants "Deborah G. Schult, Warden, FCI Ray Brook" and "D. Marini, M.D., Clinical Director, FCI Ray Brook." Plaintiff alleges the "record will show that the two defendants did knowingly have knowledge of plaintiff injuries and that plaintiff do still suffer serious side effect(s)." Amended Complaint p. 2. The amended complaint does not describe the alleged injuries or side effects.

On November 4, 2009 this Court filed a Decision and Order. Docket No. 19. The Court reviewed the amended complaint and the foregoing history. Since the new defendants were federal employees, the Court construed the amended complaint as one filed pursuant to *Bivens Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court noted that the amended complaint no longer names "Warden, U.S.P. Lompoc," "B.O.P.", or "U.S.P. LOMPOC" as defendants, and dismissed the action as against them, and directed that the docket report be amended to reflect Dr. Marini and Warden Schult as the sole defendants (pp. 2-3). Construing the

amended complaint with "the utmost leniency," in light of plaintiff's *pro se* status, the Court concluded that plaintiff had alleged Warden Schult "received, reviewed, and failed to remedy plaintiff's complaint that he was not receiving adequate medical care at Ray Brook. Plaintiff's claim against Dr. Marini, while far from clear, appears to be that Dr. Marini denied him adequate medical care for his medical needs." (p. 3). The Court accepted the amended complaint for filing, "despite the brevity of the pleading, [and] in light of plaintiff's *pro se* status." (p. 4).

**Legal Argument**

    **I.**    **The Complaint fails to state a claim.**

When reviewing a complaint, the Court should consider Fed. R. Civ. P. 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to "give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Dorsey v. Fisher*, 2009 WL 4985421, at *2 (N.D.N.Y. Dec. 15, 2009) (Sharpe, J.), quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)(McAvoy, C.J.).

A *pro se* complaint is reviewed under a "more lenient standard" than the one applied to formal pleadings drafted by lawyers. *Andino v. Fischer*, 2010 WL 985209, at *9 (S.D.N.Y. March 17, 2010), citing *Haines v. Kerner*, 404 U.S. 519 (1972)(*per curiam*). However, "[w]hile held to a less stringent standard, the *pro se* plaintiff is not relieved of pleading requirements, and failure to plead the basic elements of a cause of action may result in dismissal." *Andino*, , 2010 WL 985209, at *9.

The current standard for assessing the sufficiency of a complaint was succinctly stated by Judge Sharpe in *Dorsey v. Fischer*, 2009 WL 4985421, at *2, *supra*:

> A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 129 S. Ct. at 1949 (citing *Twombly*, 127 S. Ct. 1955). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" *Ashcroft*, 129 S. Ct. at 1949 (citing Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 129 S. Ct. at 1949. Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). Allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, No. 08-0102-cv, 2009 WL 1762856, at *1 (2d Cir. Jun. 23, 2009).

Finally, an inmate may bring a *Bivens* claim for deliberate indifference to a serious injury or illness. *Brown v. Lindsay*, 2010 WL 1049571, at *16 (E.D.N.Y. March 19, 2010), citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.*, quoting *Estelle*, 429 U.S. at 106. "'[D]eliberate indifference describes a state of mind more blameworthy than negligence,' akin to recklessness." *Id.*, quoting *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).

The Complaint at bar is five single-spaced pages long, with no separately numbered paragraphs.[1] Almost all of the Complaint is a review of plaintiff's administrative remedies. Pp. 2-5. The substantive allegations are thin: the Complaint identifies Dr. Marini and Warden Schult as defendants and alleges the "record will show that the two defendants did knowingly have knowledge

---

[1] Fed. R. Civ. P. 10 requires that "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." This rule was designed "to facilitate[ ] the clear presentation of the matters set forth, 'so that allegations might earily be referenced in subsequent pleadings.'" *O'Diah v. State of New York*, 2010 WL 786271 (N.D.N.Y. March 2, 2010). A "complaint that fails to comply with these Rules 'presents too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims.'" *Id*. at * 9, quoting *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). When a complaint is not "short and plain," as required by Rule 8, the court has the power on its own motion to dismiss the complaint. *Id.*, citing *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1998). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any , is well disguised." *Id*. Some courts have overlooked a plaintiff's failure to properly number the paragraphs in a complaint. *See e.g. Linares v. Mahunik*, 2006 WL 2595200, at *5  (N.D.N.Y. Sept. 11, 2006) (regarding a six-page narrative, which actually alleged several causes of action, "[p]laintiff's failure to number his paragraphs amounts to nothing more than a technical but harmless violation of the Federal Rules, and thus, absent any prejudice to Defendants, is an improper basis for dismissal."); and *Dent v. Rabinowitz*, 2007 WL 388918, at *2 (N.D.N.Y. Jan. 31, 2007) (Scullin, J. and Homer, M.J.) (seven-page complaint which gave defendants "meaningful notice" of a deliberate indifference claim was not dismissed, quoting *Linares*).  Other courts have dismissed complaints where paragraphs were not numbered. *See e.g. Gonzales v. Wing*, *supra*, 167 F.R.D. 352, 354-55 (N.D.N.Y. 1996) (McAvoy, J.)(287-page complaint which was  "incredibly dense and verbose", where it was "impossible" to discern which facts related to which claims, was dismissed with leave to replead within 45 days); *O'Neil v. Ponzi*, 2010 WL 502943, at *5 (N.D.N.Y. Feb. 9, 2010) (Suddaby, J. and Lowe, M.J.)(28-page "confused, rambling, disjointed, and otherwise unintelligible" amended complaint was dismissed, after  original complaint was dismissed with leave to replead).  This plaintiff was previously given leave to replead, and plaintiff's response was to file an amended  complaint about an entirely new incident, that is five pages long with no paragraph numbers.  It would be difficult if not impossible to frame a meaningful answer to such a diffuse pleading.  Nonetheless, in light of the extreme solicitude which was shown to him previously by the Second Circuit, we request the Court to focus on the more serious problems which are discussed *infra*, namely the failure of this pleading to state a claim, the complete lack of any allegation showing personal involvement, and plaintiff's lack of standing due to his five previous deportations.

6

of plaintiff injuries and that plaintiff do still suffer serious side effect(s)." P. 2.  Neither the injuries nor the side effects are described.  The Complaint alleges the "quick-fix treatment did not resloved [sic] his medical problem, which was substain [sic] from the beating he suffer at the hands of two correctional officer's [sic]." P. 3.  The "medical problem" is not described.  The Complaint refers to several exhibits (most of which relate to USP Lompoc), and alleges that the "evidence presented here of ill treatment by staff throughout the bureau of Prisons.  Shows that their [sic] is a problem concerning inmates getting proper medical treatment." P. 4.

Even read liberally, an allegation that two prison officials were aware of unspecified "injuries," and that there is unspecified "ill treatment by staff throughout the bureau of Prisons," does not begin to allege deliberate indifference by two individuals.  It does not allege a "state of mind more blameworthy than negligence," and in fact alleges no state of mind at all, regarding either defendant.  Regarding Dr. Marini, the closest the Complaint comes to a concrete allegation is a claim that "(Exhibit -S) are Dr. Marini's interpretation of plaintiff right foot, which was X-rayed at Ray Brook Correctional Institution."  Complaint Exhibit S is an x-ray report by another physician, which was reviewed by Dr. Marini, as evidenced by her stamp– and it actually shows that she provided medical care, not that she was deliberately indifferent.

Regarding Warden Schult, there is no concrete allegation at all.  "'Because vicarious liability is inapplicable to *Bivens* and §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution.' *Iqbal*, 129 S.Ct. at 1948 (emphasis added); *see Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) (noting that personal involvement in constitutional deprivation is a prerequisite to *Bivens* recovery.)." *Dowdy v. P.A. Hercules*, 2010 WL 169624*6 (E.D.N.Y. Jan. 15, 2010) (emphasis added by *Dowdy* court).

The Complaint fails to identify any individual actions by Warden Schult or Dr. Marini, and fails to satisfy the requirement that personal involvement must be pled. *Cf. Powell v. Marine Midland Bank*, *supra*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)(McAvoy, J.), dismissing a *pro se* complaint which "clearly" violated Rule 8, which "does not provide an adequate description of the particular acts by the defendant which led to this suit or an explanation of how such acts were illegal." Vague allegations of "ill treatment" by staff generally are simply not sufficient.

Plaintiff has also submitted a "Declaration/Affidavit," attached to the Complaint, which allegedly demonstrates that the action is not time-barred. *See* ¶2. The Declaration alleges that plaintiff spoke to "the Warden, Ms. Deborah G. Schult. I found her during the noon-time-meal, standing mainline On [sic] April 22, 2009, I explain [sic] my situation to the Warden, therefore, I was told by her, I must go to the person who handle mail in Ray Brook Correctional Institutional mail room." (P. 2). He alleges he went to the mail room without success, and contends "that he was treated unfairly, and also received warning that if he did not stop harassing staff he will be sent to Special Housing Unit (SHU)." *Id*. The foregoing is not entirely clear, and in particular it is not clear how Warden Schult violated plaintiff's constitutional rights by allegedly referring him to the mail room. Also, a claim of unspecified "unfair treatment," by staff generally, does not show the requisite personal involvement by Warden Schult and Dr. Marini. In short, the Declaration does not cure the pleading defects that are evident in the Complaint itself, and if anything only highlights the lack of any allegation of a constitutional violation, or any personal involvement by these two defendants in such a violation.

## II.     **Plaintiff Lacks Standing Due to Five Deportations**

Plaintiff is no longer an inmate and is no longer present in the United States. He was removed from the United States to Mexico most recently on September 4, 2009. *See* Letter dated April 6, 2010 from Karen L. Bruce, Deportation Officer, Department of Homeland Security. Exhibit A. Plaintiff has been removed from the United States five times. *Id.* He served a 30 month, 3 year sentence for re-entry in 2002, and a 70 month sentence for re-entry after deportation in 2006. *Id.* A summary of plaintiff's removals, and the events around his latest illegal re-entry in 2004, is attached to the letter from Deportation Officer Bruce.[2] The relevant dates are at the beginning of that summary, as follows:

| | |
|---|---|
| 12/27/1996: | Excluded to Mexico via Calexico, California |
| 4/23/1997:  | Excluded to Mexico via Calexico, California |
| 6/13/2000:  | Excluded to Mexico via Laredo, Texas (Served 45 days for Re-Entry) |
| 10/11/2002: | Federal Bureau of Prisons - to serve 30 months 3 years for Illegal Re-entry |
| 2/13/2004:  | Excluded to Mexico via El Paso, Texas |
| 4/12/2006:  | To serve 70 months for Illegal Re-Entry |
| 9/4/2009:   | Deported to Mexico |

A litigant must have "standing" in order to invoke the power of a federal court. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id*. at 750-751.

---

[2]Plaintiff's Complaint, p. 4 lists two addresses where he can be found in Mexico. Also, by letter dated September 10, 2009, and filed September 18, 2009 (Docket No. 17), plaintiff advised the Court that he was now residing in Mexico. Attached to this letter is a "Warning to Alien Ordered Removed or Deported," from the U.S. Department of Homeland Security, Immigration and Naturalization Service, advising plaintiff that "In accordance with the provisions of Section 212(a)(9) of the Immigration and Nationality Act, you are prohibited from entering, attempting to enter or belong in the United States . . . At any time because you have been found inadmissible or excludable under section 212 of the Act, or deportable under section 241 or 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated as an aggravated felony." *See* Exhibit B.

Standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1951). Standing is perhaps the most important limitation on the ability of a federal court to hear a "case and controversy." Id. Standing is an element of subject matter jurisdiction, and a defendant may challenge standing in a motion to dismiss. *See Wright, Miller, et. al. Fed. Prac. & Proc*. § 3531.15. The party asserting federal jurisdiction bears the burden of establishing standing. *See id.*

Standing has three essential elements. First, the plaintiff must have suffered an "injury in fact"—an invasion of a "legally protected interest" which is (a) concrete and particularized, and (b) "actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, there must be a causal connection between the injury and the conduct complained of. Id. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id.* at 561.

In addition to proving these elements, plaintiffs must demonstrate that they satisfy the doctrine's "prudential" limitations. *Allen*, 468 U.S. at 751. Such limitations include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Id. The latter requirement is at issue here. To have standing, the plaintiff must show that he is a "proper proponent" of the "particular legal rights" on which he bases his suit. *See Singleton v. Wulff*, 428 U.S. 106, 112 (1976). In other words, the issue is whether a deported alien whose presence in this country is illegal is the "proper proponent" of constitutional rights which he does not possess? Case law illustrates that the answer is clearly "no."

Aliens enjoy only limited standing. Standing to sue "in cases involving the rights of immigrants and persons subject to deportation has always stood on a special footing." *Kukatush Mining Corp. v. SEC*, 309 F.2d 647, 650 (D.C. Cir. 1962) (denying standing to a Canadian corporation which sought to strike names of corporations from a "Canadian restricted list"). An alien is entitled to an "ascending scale of rights as he increases his identity with our society." *Kwong Hai Chew v. Colding et al.*, 347 U.S. 590, 596 n.5 (1953). An alien's "mere lawful presence" creates some rights; these rights become "more extensive and secure" when he declares his intent to become a citizen; and "they expand to those of full citizenship upon naturalization." *Id.*

The leading case in this area is *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), in which the Supreme Court held that the Fourth Amendment did not apply to a search by DEA agents of a Mexican citizen's house in Mexico. The Court ruled that "the people" protected by the Fourth Amendment, as well as the First and Second Amendments, were the "class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Id.* at 265. The Court cited the "sliding scale" of rights discussed earlier, which vary according to an alien's lawful connections. *Id.* at 274. Of utmost importance here, the Court cautioned against allowing aliens with no lawful connection to the United States to bring Bivens claims. See id. (citing *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971)) ("Were respondent to prevail, aliens with no attachment to this country might well bring actions for damages to remedy claimed violations of the Fourth Amendment in foreign countries or in international waters.")

Significantly, the Court in *Verdugo-Urquidez* took pains to distinguish cases which had held that resident aliens enjoy constitutional rights under the Fifth, Sixth, and Fourteenth Amendments:

11

"[t]hese cases, however, establish only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Id.* at 270–71 (citing *Plyler v. Doe*, 457 U.S. 202, 212 (1982); *Kwong Hai Chew v. Colding et al.*, 347 U.S. 590, 596 n.5 (1953)). The Court quoted its previous decision in Kwong Hai Chew: "[t]he Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores. But once an alien lawfully enters and resides in this country he becomes invested with the rights guaranteed by the Constitution to all people within our borders." 347 U.S. at 596 n.5 (emphasis added).

The rationale for this "substantial connections" test lies in social contract theory. "Because our constitutional theory is premised in large measure on the conception that our Constitution is a 'social contract,' "the scope of an alien's rights depends intimately on the extent to which he has chosen to shoulder the burdens that citizens must bear." *United States v. Barona*, 56 F.3d 1087, 1093–94 (9th Cir. 1995) (quoting *United States v. Verdugo-Urquidez*, 856 F.2d 1214, 1231-33 (9th Cir. 1988)). *See also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (holding "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative . . . however, once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly.")

A recent case in the District of Kansas clearly illustrates the application of the "substantial connections" test. In *U.S. v. Gutierrez-Casada*, the defendant, an illegal alien who had been previously deported and later reentered the country, asserted Fourth Amendment rights after his house was the subject of a police search. 553 F. Supp. 2d 1259, 1267 (D. Kan. 2008). Holding that

the defendant did not satisfy the "substantial connections" test, the court reasons:

> Just as an escaped prisoner is wrongfully present anywhere but in the penitentiary, the deported felonious alien is wrongfully present anywhere in the United States. Just as an escaped prisoner enjoys no greater Fourth Amendment rights when outside the prison walls than he does when within them, a deported felonious alien obtains no greater Fourth Amendment rights by reentering the United States than he would have had if he had remained outside the United States.

*Id.* The court further notes that the defendant likewise would have had no Fourth Amendment rights if he had remained outside the United States "because that Amendment has no extraterritorial application." *Id.; see also United States ex rel. John Turner v. Williams*, 194 U.S. 279, 292 (1904) (holding that an excludable alien, who entered the country illegally, could not enforce the First Amendment); *U.S. v. Ullah*, 2005 WL 629487, at *29–30 (W.D.N.Y. Mar. 17, 2005) (holding that plaintiff did not satisfy the Verdugo-Urquidez "substantial connections" test because he could not show that his presence in the United States was lawful).

Here, Plaintiff lacks standing because he has no lawful connection to the United States. He has been deported five times and, as discussed previously, is currently barred from entering the United States, and is living in Mexico. His conduct demonstrates an unwillingness to join the social contract upon which the Constitution is based, and a refusal to shoulder any of the burdens of citizenship. Plaintiff is less than a stranger to this country; he has been removed and is totally unwelcome here. On the "sliding scale" of aliens who are entitled to enforce some rights, he is at the bottom. In the language of the Supreme Court in Verdugo-Urquidez, Plaintiff's connections to the United States are far from substantial. *See* 494 U.S. at 265. The United States deported Plaintiff on five separate occasions in the last fourteen years. Defendants cannot improve upon the articulation of the district court in *U.S. v. Gutierrez-Casada*: "[t]he United States exercised its sovereign right in determining that this defendant is not permitted to remain within its borders. A

more insubstantial connection to this country . . . can hardly be imagined." 553 F. Supp. 2d 1259, 1267 (D. Kan. 2008).

> The essence of prudential standing is whether the litigant falls within the "zone of interests" protected by the law—that is, whether he is a "proper proponent" of the asserted rights. Plaintiff's unlawful reentry to the United States does not somehow secure for him constitutional rights that are denied the rest of the population of Mexico. Time and again, the United States government has told Plaintiff, in effect, "you are not welcome here." To allow Plaintiff to sue a government employee for violation of a Constitution which, by his behavior, he has effectively renounced, would make a mockery of the Constitution and the social contract upon which it is based. See generally United States v. Barona, 56 F.3d 1087, 1093–94 (9th Cir. 1995). He "does not become one of the people to whom these things are secured by our Constitution by an attempt to enter forbidden by law." United States ex rel. John Turner v. Williams, 194 U.S. 279, 292 (1904). Plaintiff is outside of that social contract and is outside the proper bounds of standing.

**Conclusion**

For the foregoing reasons, the Complaint should be dismissed for failure to state a claim and for lack of subject matter jurisdiction and standing.

Dated: April 8, 2010

RICHARD S. HARTUNIAN
United States Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

By:   /S
      _____
      Charles E. Roberts
      Assistant U.S. Attorney
      Bar Roll No. 102454